**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Case No. 4:23-cv-430-MTS |
| | ) |
| AZTEC CONSTRUCTION SPECIALTIES, LLC, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Default Judgment against Defendant Aztec Construction Specialties, LLC.  Doc. [18].[1]  Twice now, the Court has denied Plaintiffs' Motion for Default Judgment on the issue of damages and allowed Plaintiffs to submit additional briefing and exhibits to support their requested damages.[2]  *See Greater St. Louis Constr. Laborers Welfare Fund v. Aztec Constr. Specialties, LLC*, 4:23-cv-430-MTS, 2023 WL 4864567 (E.D. Mo. July 31, 2023); *Greater St. Louis Constr. Laborers Welfare Fund v. Aztec Constr. Specialties, LLC*, 4:23-cv-430-MTS, 2023 WL 5555781 (E.D. Mo. Aug. 29, 2023).  For reasons discussed below, the Court awards Plaintiffs "reasonable" attorney's fees and costs, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2), and denies all other requested damages.

---

[1] For a more detailed version of the facts, see the Court's prior Memorandum and Order. *Greater St. Louis Constr. Laborers Welfare Fund v. Aztec Constr. Specialties, LLC*, 4:23-cv-430-MTS, 2023 WL 4864567 (E.D. Mo. July 31, 2023).

[2] Plaintiffs seek damages for unpaid contributions, interest, liquidated damages, attorney's fees, court costs, and audit costs.

1

* * * * *

This is now Plaintiffs' third attempt to prove damages here.  In Plaintiffs' first attempt at default judgment, they sought damages from delinquent contributions to seven different funds and in their supporting brief cited the ERISA, 29 U.S.C. § 1132(g)(2), as their legal basis for recovery.[3]  *See* Doc. [19] at 4–5.  The Court denied Plaintiffs' motion for default judgment because it appeared Plaintiffs sought damages for some non-ERISA funds.  *Aztec*, 2023 WL 4864567, at *3.  In their second attempt at default judgment, Plaintiffs conceded several categories of damages were from non-ERISA funds, and thus could not be recovered pursuant to ERISA, but instead, could be recovered based on "contractual obligations" in the collective bargaining agreements (CBAs).  Doc. [25] at 6, 4.  The Court again denied Plaintiffs' motion for default judgment and questioned Plaintiffs' ability to recover damages from non-ERISA funds given the allegations in the Complaint and the absence of any "legal or statutory mechanism under which these damages from non-ERISA funds are recoverable."  *Aztec*, 2023 WL 5555781, *1.  In their third attempt at default judgment, Plaintiffs now assert they are entitled to damages from the non-ERISA funds pursuant to Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and that they alleged violations of both ERISA and the LMRA in their Complaint.  *See* Doc. [27].

1. **Damages pursuant to ERISA**.

Plaintiffs request damages for delinquent contributions (plus interest and liquidated damages), attorney's fees, court costs, and audit fees, pursuant to ERISA, 29 U.S.C. § 1132(g)(2).  For reasons discussed below, the Court awards Plaintiffs "reasonable" attorney's fees and costs only.

---

[3] Plaintiffs also incorrectly provided the summary judgment standard as the "legal standard" in their brief in support of their motion for default judgment.  Doc. [19] at 4.

a. ***Plaintiffs did not meet their burden to show damages for unpaid contributions and the accompanying interest and liquidated damages***.

Plaintiffs support their request for unpaid contributions to ERISA funds (and accompanying interest and liquidated damages) with two reports: (1) an audit of Defendant for the period of October 1, 2018, through March 31, 2022 (the "Audit"), *see* Doc. [19-6], and (2) "certified payroll records from an entity for whom defendant performed covered work" (the "Payroll Record"), *see* Doc. [19-7], (collectively, "the Reports").  Doc. [19-1] ¶¶ 13–16.

Plaintiffs do not identify the auditor who performed the Audit or the entity who produced the Payroll Record.  Nor do Plaintiffs provide any affidavit to authenticate these two Reports.[4] Rather the Audit and Payroll Record consist solely of a spreadsheet with no information on "who created this record, who maintains it, when it was created, or how it was compiled."  *MC-UA Loc. 119 Health & Welfare Fund v. HLH Constructors, Inc.*, 1:11-cv-00241-WS, 2011 WL 5419740, at *5 (S.D. Ala. Nov. 9, 2011) (denying damages in part based on lack of sufficient evidence in support of default judgment); *see also Trustees of Loc. 7 Tile Indus. Welfare Fund v. Goal Enterprises, Inc.*, 1:20-cv-1958-KAM, 2022 WL 17820088, at *7 (E.D.N.Y. July 6, 2022) (declining to grant some ERISA and LMRA damages where unpaid contributions were not properly authenticated); *Aspen Am. Ins. Co. v. Morrow*, -- F.Supp.3d --, 3:22-cv-00013-JMK, 2022 WL 17337913, at *9 (D. Alaska Nov. 30, 2022) (hesitating to grant default judgment based on the documents lack of authenticity or lack of supporting affidavit); *cf.* Fed. R. Evid. 902 (evidence that is self-authenticating).

---

[4] Plaintiffs' only plausible attempt at authenticating the Reports consists of a union official's bare statement that the "audit was performed by a third-party auditing firm on behalf of the plaintiffs" and that "plaintiffs received certified payroll records from an entity for whom defendant performed covered work."  Doc. [19-1] ¶¶ 13, 16.  Gieseking's Declaration does not indicate that he has any personal knowledge as to the amounts owed by Defendant to Plaintiffs; rather, it is clear from his declaration that he is merely reciting what is in the Audit, which was performed by an unidentified third-party, and reciting what is in the Payroll Record, which was "received by Plaintiffs" from an unidentified party.  *Cf.* Fed. R. Civ. P. 56(c)(4) (requiring an affidavit used to support a motion for summary judgment to be "made on personal knowledge" and that the affiant would be "competent to testify on the matters stated").

Most perplexing though is that the Audit is on an identical spreadsheet as the Payroll Record, which is not an audit, but a "certified payroll record" produced by a different unidentified party. The initial, obvious question is whether the Audit is really a record of a "third-party auditing firm" or a record of Plaintiffs. The same is true for the "certified payroll record." Of course, this would not be an issue had Plaintiffs authenticated the Reports or produced an accompanying affidavit from someone with personal knowledge of the audit procedures or payroll records.

Even if the Court were to overlook the clear authentication issues with the Reports, Plaintiffs do not even attempt "to explain the many columns of numbers, the abbreviations in the column headings, or the source and meaning of the data." *HLH Constructors, Inc.*, 2011 WL 5419740, at *5; *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO by Christian v. BKS-NY, LLC*, 1:18-cv-00256-LDH, 2018 WL 4522103, at *9 (E.D.N.Y. Aug. 6, 2018) (declining to grant some damages because the audit "lack[s] . . . a sufficient explanation" and requires "submitting supplemental evidence demonstrating that the calculations . . . are correct, either in the form of an affidavit explaining the auditors' method . . . or direct evidence of the same"). For example, as to the Payroll Record, the Court has no basis to determine whether Defendant's employees were performing "covered work," Doc. [19-1] ¶ 16. *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 583–85 (8th Cir. 2000) (concluding the auditor's report did not support the union's claims for damages because there was "nothing in the record establishing that these 188 unreported hours related to work covered by a . . . collective bargaining agreement"). Moreover, it was only after the Court requested clarification from Plaintiffs, *Aztec*, 2023 WL 4864567, at *3, that they explained some of the columns in the Reports concerned both ERISA *and* non-ERISA funds, Doc.

[25] at 6, which may require different calculations depending on the governing law and provisions of the applicable contractual agreement.[5]  The Reports do not account for this distinction.[6]

What is more, for several "categories" of damages, the skeletal spreadsheets simply output final numbers with no explanation of calculation, methodology, formula, or source.  *Goal Enterprises*, 2022 WL 17820088, at *7 (declining to grant damages where plaintiffs failed "to articulate the method by which the unpaid contributions were calculated or estimated").  Worse, there is conflicting evidence before the Court regarding how some of these categories would even be calculated.  For example, there is conflicting evidence on the calculation of interest,[7] and neither the Reports nor anything in the record explains how the final amount of interest was determined, despite nakedly concluding, "interest: 7,696.42."  Doc. [19-6] at 2 (the Audit).  Even engaging in a combination of guesswork and conjecture (which is not permissible in damages awards), the Court has been unable to replicate the interest calculation listed in the Gieseking Declaration,[8] Doc. [19-1] ¶ 11, using various combinations of columns and a calculator.

For these reasons, the Court denies Plaintiffs' request for damages for unpaid contributions to the ERISA funds, as well as any accompanying interest and liquidated damages.  And, for the same reasons, the Court finds audit costs "inappropriate" here.  29 U.S.C § 1132(g)(2)(E) (stating "other legal or equitable relief as the court deems appropriate" recoverable under ERISA).

---

[5] For example, ERISA provides a set rate of interest in certain circumstances.  *See* 29 U.S.C. § 1132(g)(2).

[6] The Reports calculate interest as a combined total from both ERISA and non-ERISA funds.

[7] Several times Plaintiffs' counsel states the CBAs impose a 20% interest on delinquent contributions, *see, e.g.*, Doc. [19-1] at 2, but the Gieseking Declaration states something different, Doc. [19-1] ¶ 11, as do the CBAs, *see, e.g.*, Doc. [19-4] at 14.

[8] Gieseking's Declaration, Doc. [19-1] ¶ 11, references the rule that if a CBA does not have a set rate of interest, the statutory rate provided by 26 U.S.C. § 6621 applies, as required by ERISA, 29 U.S.C. § 1132(g)(2).  But such calculation requires knowing the "IRS underpayment rate, which is the total of the federal short-term rate plus 3%," Doc. [19-1] ¶ 11, and that information is nowhere in the record.  Thus, the Court has no way of assessing whether the interest calculations are sufficient.

     b.   ***The Court awards Plaintiffs "reasonable" attorney's fees and costs***.

Plaintiffs request attorneys' fees in the amount of $2,287.00 and court costs in the amount of $510.64, for a total of $2,797.64.  While Plaintiffs are entitled to these damages,[9] the attorney's fees and costs must be "reasonable."  29 U.S.C. § 1132(g)(2)(D).  The Court does not believe $2,287.00 of attorney's fees is reasonable here given the entirely deficient motion for default judgment, including, but not limited to, the utter lack of "legal research,"[10] the questionable "accompanying documents," and inaccurate facts in the "motion for default judgment."[11]  Doc. [19-8] ¶ 3 (describing the services Plaintiffs were charged for attorney's fees).[12]  Therefore, the Court reduces the attorney's fees by half because the Court finds the number of hours expended were unreasonable given the work product submitted to the Court.  *McClelland v. Life Ins. Co. of N. Am.*, 679 F.3d 755, 762 (8th Cir. 2012) (reducing attorney fees in ERISA case where the number of hours expended was "clearly excessive").  Therefore, the Court awards attorneys' fees in the amount of $1,143.50 and court costs in the amount of $510.64, for a total of $1,654.14.

    2.   **Plaintiffs are not entitled to damages pursuant to the LMRA**.

On their third attempt at default judgment, Plaintiffs now argue they are entitled to damages from non-ERISA funds pursuant to the LMRA.  But a plain look at the Complaint shows Plaintiffs requested damages pursuant to ERISA only.  *See* Doc. [1].  Plaintiffs pay mere lip service, if even,

---

[9] *Aztec*, 2023 WL 5555781 (granting "Plaintiffs' motion as to liability" under ERISA, 29 U.S.C. § 1145); *see also Aztec*, 2023 WL 4864567, *2 (partially granting liability under ERISA).

[10] In Plaintiffs' Motion for Default Judgment, the only law Plaintiffs cite is (1) a copy-and-paste provision from 29 U.S.C. § 1132(g)(2), (2) the summary judgment standard (incorrectly), and (3) a string cite of two legal cases from the 1980's.  Doc. [19] at 4–5.

[11] This includes the interest issue discussed in Footnote 6 and Plaintiffs' attempt to collect damages from non-ERISA funds under the ERISA statutory provision, Doc. [19] at 5.

[12] In the declaration from Janine M. Martin, the attorney for Plaintiffs in the instant action, she said her firm charged Plaintiffs attorney's fees for "review of documents, emails and telephone calls; drafting and e-filing the complaint and related documents; various communications with client and employer; legal research; review of discrepancy reports and audit; draft, review and filing of motion for default judgment and accompanying documents."  Doc. [19-8] ¶ 3.

to the LMRA; the only mention of the LMRA is regarding jurisdiction, *see, e.g.*, Doc. [1] ¶¶ 5–7, and a one-time mention of "other non-ERISA funds" is insufficient to infer damages pursuant to the LMRA, *id.* ¶ 8.  Claims under ERISA and the LMRA are distinct and different rules apply to each claim, as Plaintiffs acknowledge.  *See* Doc. [27] at 2.  Yet, Plaintiffs did not bring separate counts or claims in their Complaint.[13]  Plaintiffs did not even attempt to plead that their requested damages are recoverable pursuant to the LMRA,[14] as Plaintiffs <u>do</u> with respect to ERISA.  *See* Doc. [1] ¶ 14 ("Plaintiffs are entitled to recover interest, liquidated damages, costs, and reasonable attorneys' and accounting fees pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1132(g), and pursuant to the terms of the collective bargaining agreement and the plans' trust agreements.").

Because a "default judgment must not *differ in kind* from . . . what is demanded in the pleadings," Fed. R. Civ. P. 54(c) (emphasis added), the Court denies Plaintiffs' request for damages for unpaid contributions to non-ERISA funds, as well as any accompanying interest and liquidated damages.[15]

---

[13] For example, Plaintiffs do not even allude to a breach of contract claim.  *See* 29 U.S.C. § 185(a) (authorizing under the LMRA "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce"); *Plumbers & Pipefitters Loc. 625 v. Nitro Constr. Servs., Inc.*, 27 F.4th 197, 200 (4th Cir. 2022) ("The federal common law to be applied in § 301 cases is ordinarily the general law of contracts."); Doc. [27] at 1 (Plaintiffs acknowledging "Section 301(a) of the LMRA is a federal 'breach of labor contract' claim that permits a union or an employer to bring suit against the other for violation of the CBA between the parties").

[14] ERISA, unlike the LMRA, allows a party to recover certain categories of damages in an action for delinquent contributions, 29 U.S.C. § 1132(g)(2).

[15] The Court notes Plaintiffs request for non-ERISA damages fails for other reasons too, notably, because Plaintiffs failed to show they are entitled to the *amount* of damages requested.  While Plaintiffs may have cited the specific provisions of the CBA that set forth Defendant's agreement to make contributions to the non-ERISA funds, it did not similarly point to evidence that sets forth the rates for calculation of interest or damages.  In other words, Plaintiffs failed to show the relevance or applicability of the CBAs to their calculation of damages from non-ERISA funds.  Moreover, for reasons discussed in Section 1 of this Memorandum and Order, the Reports Plaintiffs rely on to prove damages from non-ERISA funds are insufficient.

**Conclusion**

In conclusion, the Court awards Plaintiffs "reasonable" attorneys' fees and costs, pursuant

to 29 U.S.C. § 1132(g)(2), in the total amount of $1,654.14.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment, Doc. [18], is

**GRANTED** *in part* and **DENIED** *in part*.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 12th day of September 2023

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE